**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN (WATERLOO) DIVISION**

WAYNE SMITH,

    Petitioner,

vs.

RUSTY ROGERSON,

    Respondent.

No. C 06-2011-MWB

**MEMORANDUM OPINION AND ORDER REGARDING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

_____

**TABLE OF CONTENTS**

*I. INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *A. The § 2254 Petition* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *B. The Report and Recommendation* . . . . . . . . . . . . . . . . . . . . . . . 5
   *C. Smith's Objections* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*II. LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
   *A. Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
   *B. Smith's Objections* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
      *1.  Improper application of circuit law* . . . . . . . . . . . . . . . . . . 8
          *a.    Smith's argument* . . . . . . . . . . . . . . . . . . . . . . . 8
          *b.    Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
      *2.  Erroneous conclusion that* **Alford** *plea requirements were satisfied* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
          *a.    Smith's argument* . . . . . . . . . . . . . . . . . . . . . . 10
          *b.    Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
      *3.  Erroneous finding that trial counsel adequately explained the "incidental rule"* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
          *a.    Smith's argument* . . . . . . . . . . . . . . . . . . . . . . 18
          *b.    Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*III. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Petitioner Wayne Smith's March 30, 2006, *pro se* Petition Under 28 U.S.C. § 2254 For Writ Of Habeas Corpus By A Person In State Custody (docket no. 3) comes before the court pursuant to the April 23, 2008, Report and Recommendation (docket no. 30) by Chief United States Magistrate Judge Paul A Zoss recommending that the Petition be denied. Smith, now represented by counsel, filed his Objections To Report and Recommendation (docket no. 35) on May 21, 2008. The respondent filed no objections to the Report and Recommendation and no response to Smith's Objections. The court must now consider Smith's Objections and whether to accept, reject, or modify Judge Zoss's Report and Recommendation in light of those Objections.

## *I. INTRODUCTION*
### *A. The § 2254 Petition*

Smith's Petition arises from his guilty plea pursuant to a plea agreement, on August 22, 2001, the day of jury selection for his trial, to the following charges: kidnaping in the third degree, in violation of IOWA CODE §§ 710.1 and 710.4 (reduced from kidnaping in the first degree in violation of IOWA CODE §§ 710.1 and 710.2); assault with intent to commit sexual abuse, in violation of Iowa Code §§ 709.1 and 709.11 (reduced from sexual abuse in the second degree, in violation of IOWA CODE § 709.1 and 709.3); and willful injury, in violation of IOWA CODE § 708.4, all as an habitual offender as defined in IOWA CODE § 902.8. The victim of these offenses was Chandra Harper, with whom Smith was cohabitating at the time. Not only were some of the charges reduced in return for Smith's

plea, but the State also dismissed a charge of domestic abuse assault. The parties agree that Smith's motivation to plead guilty was to avoid a potential life sentence if he went to trial and was convicted on the first-degree kidnaping charge and that he protested his innocence of the charged offenses or the reduced offenses to which he pleaded guilty, but that he pleaded guilty to the reduced charges because he believed, at least at the time, that it was in his best interest to do so. Pursuant to his plea agreement, Smith received a fifteen-year sentence, with a requirement that he serve a minimum of three years, on each of the charges to which he pleaded guilty, with the sentences to be served consecutively.

Although Smith did not file a direct appeal, he did file a *pro se* application for post-conviction relief on February 22, 2002, asserting various grounds for such relief. That post-conviction relief application was amended by appointed counsel on September 23, 2002, to add and clarify various claims. However, the post-conviction relief court granted the State's motion to dismiss the post-conviction relief application on October 2, 2002. Smith appealed that dismissal and won a reversal and remand for a hearing on his claims of ineffective assistance of counsel and misstatement of the burden of proof by the trial court at the guilty plea proceedings, which counsel had not corrected. After remand, however, the district court overruled Smith's amended post-conviction relief application, finding that Smith had failed to show that his trial attorneys' performance had been deficient in any way or that the result of the proceedings would have been different absent his attorneys' alleged ineffectiveness. Smith appealed the denial of his application for post-conviction relief, but appointed counsel filed a motion to withdraw pursuant to Rule 6.104 of the Iowa Rules of Appellate Procedure, asserting that the appeal was frivolous. Although Smith requested appointment of new counsel to pursue the appeal, the Iowa Supreme Court granted Smith's counsel's motion to withdraw and dismissed his appeal as frivolous on January 28, 2005.

In his subsequent Petition for federal *habeas* relief pursuant to 28 U.S.C. § 2254, as clarified by appointed counsel in the course of these proceedings, including a Merits Brief (docket no. 16) filed on December 1, 2006, Smith alleges that his trial counsel rendered ineffective assistance in that (1) his guilty plea was entered incorrectly and contrary to the standards set forth in *North Carolina v. Alford*, 400 U.S. 25 (1970), and (2) he was not properly informed regarding the plea he entered—particularly as to lesser-included offenses and the "incidental rule" applicable to kidnaping offenses under Iowa law—so that his plea was not entered intelligently, knowingly, and voluntarily. Somewhat more specifically, he asserts that his attorneys failed him by allowing him to pursue and enter an *Alford* plea, despite his protestations of innocence, the lack of strong evidence in the record, and insufficiency of the minutes of testimony to establish the "confinement" element of the kidnaping offense in light of the "incidental rule" under Iowa law, which requires that any confinement of the victim for purposes of a kidnaping charge must be more than what is incidental to the commission of the underlying substantive offense, in this case, sexual assault. He also contends that the trial judge improperly reversed the burden of proof, in the plea colloquy, by placing upon him the burden to prove his innocence by evidence and witnesses. As to his second claim, which is somewhat interwoven with his first, Smith argues that he was not properly informed about lesser-included offenses, and particularly that sexual abuse crimes can be lesser-included offenses of kidnaping offenses. He also repeats his contention that he was not properly informed of Iowa's "incidental rule." He contends that, had he been properly informed, he would have gone to trial and would have been acquitted of the kidnaping offense, because there was no "confinement" that was more than incidental to any sexual assault.

## B. The Report and Recommendation

In his Report and Recommendation, Judge Zoss concluded that, as to Smith's claim of an improper *Alford* plea, the Iowa post-conviction relief court had relied on only Iowa case law, but that the governing principles identified by the Iowa court were consistent with those established by the United States Supreme Court in *Alford*. He also concluded that the Iowa court applied those legal principles reasonably to the facts of the case and that its decision was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Somewhat more specifically, Judge Zoss agreed with the state post-conviction relief court that the trial judge's questions had been designed to resolve the conflict between Smith's waiver of trial and his claim of innocence, because the trial judge confirmed that Smith continued to maintain his innocence, but Smith believed that the guilty plea was in his best interests, and that the minutes of testimony presented strong evidence of guilt, a finding with which Judge Zoss specifically agreed. Judge Zoss found that the trial court's apparent reversal of the burden of proof, when he asked Smith if he agreed that any evidence he might produce "would not necessarily overcome guilty beyond a reasonable doubt," was harmless, in light of the fact that the court could accept Smith's guilty plea despite his unwillingness to admit that he committed the acts constituting the charged crimes. Thus, Judge Zoss concluded that Smith knowingly and intelligently concluded that he should plead guilty to the lesser charges, rather than face the possibility of a life sentence. Because the trial court properly accepted Smith's guilty plea, Judge Zoss concluded that Smith's trial attorneys could not have been ineffective in recommending that he accept the plea deal offered by the State.

Judge Zoss also rejected Smith's contention that he was not properly advised by counsel concerning lesser-included offenses.[1] He noted that one of Smith's attorneys indicated that Smith appeared to be well-versed in the law and that he "certainly" had knowledge of lesser-included offenses. Similarly, Judge Zoss rejected Smith's claim that he was not properly advised about the "incidental rule" applicable to kidnaping charges, finding that, although neither of Smith's attorneys used the term "incidental rule," and may not have used the term "confinement," Smith was nevertheless fully informed that the State would have to prove that the victim was not free to leave, *i.e.*, that she was unable to remove herself voluntarily. Judge Zoss also found that the trial court properly summarized the elements of the three charges to which Smith pleaded, although the trial court also did not specifically state the "incidental rule." Judge Zoss agreed with the state post-conviction relief court that Smith could not show prejudice allegedly arising from either his attorneys' or the trial court's conduct, because the trial court had reviewed the minutes of testimony, and the post-conviction relief court found that the minutes proved that Smith's confinement of his victim exceeded the confinement that would be inherent to his assaults on the victim. Thus, Judge Zoss agreed with the state post-conviction relief court that Smith had failed to show a reasonable probability that the result of the proceeding would have been different, had his attorneys advised him differently.

For these reasons, Judge Zoss recommended that Smith's Petition be denied.

---

[1] Judge Zoss rejected the respondent's contention that this claim was not properly before the court, a finding to which the respondent has offered no objection.

### C. *Smith's Objections*

Smith filed Objections To Report and Recommendation (docket no. 35) on May 21, 2008, asserting the following three objections: (1) Judge Zoss erred in relying upon Eighth Circuit case law in his analysis of "clearly established" federal law; (2) Judge Zoss erred in concluding that the Iowa District Court complied with *Alford*; and (3) Judge Zoss erred in finding that trial counsel adequately explained the "incidental rule" to him. The respondent filed no objections to the Report and Recommendation and no response to Smith's Objections.

## II. LEGAL ANALYSIS
### A. *Standard of Review*

The court reviews a magistrate judge's report and recommendation pursuant to the statutory standards found in 28 U.S.C. § 636(b)(1):

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1) (2006); *see* FED. R. CIV. P. 72(b) (stating identical requirements); N.D. IA. L.R. 72, 72.1 (allowing the referral of dispositive matters to a magistrate judge but not articulating any standards to review the magistrate judge's report and recommendation). While examining these statutory standards, the United States Supreme Court explained:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute

>does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985). Thus, a district court *may* review *de novo* any issue in a magistrate judge's report and recommendation at any time. *Id*. If a party files an objection to the magistrate judge's report and recommendation, however, the district court *must* "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). In the absence of an objection, the district court is not required "to give any more consideration to the magistrate's report than the court considers appropriate." *Thomas*, 474 U.S. at 150.

### B. *Smith's Objections*

As noted above, Smith has made three objections to Judge Zoss's Report and Recommendation. The court will consider each of Smith's objections in turn.

#### 1. *Improper application of circuit law*

Smith's first objection is that Judge Zoss purportedly used an Eighth Circuit case, *Roberson v. United States*, 901 F.2d 1475 (8th Cir. 1990), to determine whether his guilty plea process complied with clearly established United States Supreme Court precedent, in this case, *North Carolina v. Alford*, 400 U.S. 25 (1975).

##### a. *Smith's argument*

Smith argues that 28 U.S.C. § 2254(d) and *Williams v. Taylor*, 529 U.S. 362 (2000), clearly establish that only United States Supreme Court precedent is relevant to the analysis of the "clearly established" federal law prong of the federal court's analysis of a state prisoner's § 2254 claims. He contends that the error here is similar to that in *Evans*

*v. Rogerson*, 223 F.3d 869, 871 (8th Cir. 2000), in which the Eighth Circuit Court of Appeals reversed an order granting *habeas* relief, because the district court had extensively explored factors set forth in an Eighth Circuit decision in deciding whether the Iowa Supreme Court's determination in that case was unreasonable. Thus, Smith contends that Judge Zoss should have relied exclusively on United States Supreme Court precedent.

        *b.*        *Analysis*

There is no room to doubt that, under § 2254(d) and *Williams*, a district court considering a § 2254 petition by a state prisoner must review the state court's determinations in light of United States Supreme Court cases, not lower federal court cases. However, that obvious principle does not mean that Smith's first objection has any merit. While it is true that Judge Zoss did use the decision of the Eighth Circuit Court of Appeals in *Roberson v. United States*, 901 F.2d 1475, 1477 (8th Cir. 1990), to *explain* or *summarize* Rule 11 of the Federal Rules of Criminal Procedure, *see* Report and Recommendation at 41, Judge Zoss's determination of whether the state post-conviction relief court's determinations concerning the propriety of Smith's *Alford* plea relied entirely and exclusively on the United States Supreme Court's decision in *Alford* itself. *See* Report and Recommendation at 42-44. If anything, Judge Zoss's reference to Rule 11 and *Roberson* was a digression. Thus, Judge Zoss's reference to circuit law is nothing like the district court's error in *Evans*, 223 F.3d at 871, where the district court "explored" and "relied on" factors for determination of whether the defendant was "in custody" that had been set forth in *United States v. Griffin*, 922 F.2d 1343, 1347-56 (8th Cir. 1990), but the appellate court found that the district court erred, because "[s]tate court attention to *Griffin* factors is not required either by *Griffin* itself or by [United States] Supreme Court precedent."

Smith's first objection will be overruled.

9

### 2. *Erroneous conclusion that* **Alford** *plea requirements were satisfied*

Smith's next objection is that Judge Zoss erred in concluding that the Iowa District Court complied with *Alford*. Indeed, Smith perceives several flaws in Judge Zoss's *Alford* analysis.

#### a. *Smith's argument*

Specifically, Smith contends that Judge Zoss erred in finding that the Iowa Court of Appeals (by which he presumably means the Iowa District Court hearing his post-conviction relief claim that *Alford* was not satisfied, because there was no appellate decision on the merits of his *Alford* plea) reasonably applied the *Alford* due process standard to the facts of Smith's case. He argues that the trial court improperly determined that there was "strong evidence" of his actual guilt, despite his protestations of innocence at the time of his guilty plea. His persistent contention is that the minutes of testimony, standing alone, did not provide sufficient evidence of guilt to comply with *Alford*. He contends that the trial court aggravated the problem by improperly shifting to him the burden to prove his innocence by asking if he agreed that any evidence that he or his witnesses would present would not necessarily overcome guilt beyond a reasonable doubt, which he contends is an error that Judge Zoss "underestimated." He notes that the trial court also failed to include a statement of the "incidental rule" in its description of the elements of the kidnaping charge to which he pleaded guilty, and that had the trial court done so, it would have been apparent that the State was attempting to bootstrap a kidnaping charge, carrying a life sentence, onto a sexual assault crime carrying a lesser penalty. He argues that the minutes of testimony of Officer Dave Taylor describe one continuous sexual assault, and that neither the minutes of his testimony nor the minutes of testimony of the alleged victim, Chandra Harper, describe any removal or confinement that is significantly independent of the commission of sexual abuse.

10

Smith also argues that the state district court completely ignored the fact that he was not properly advised about the "incidental rule" at the time of his plea. He argues that the "incidental rule" is not a defense, but part of the state's burden to prove the elements of kidnaping beyond a reasonable doubt. He argues that, without knowledge of this rule, he could not have meaningfully evaluated the risks of going to trial versus the benefits of taking the plea deal, so that his plea was not intelligently given, in that he did not possess an understanding of the law in relation to the facts of his case. He points out that the state post-conviction relief court failed to analyze why the trial court did not advise him of the "incidental rule" while taking his plea to the charge of kidnaping in the third degree, despite its duty to do so. Thus, he argues that Judge Zoss erred in finding that the Iowa courts reasonably applied *Alford* to the facts in his case.

      *b.*    *Analysis*

In *Alford*, the Supreme Court noted that, even when a defendant feels compelled to plead guilty to avoid a harsher penalty, "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Alford*, 400 U.S. at 31. The Court explained, however, "That he would not have pleaded except for the opportunity to limit the possible penalty does not necessarily demonstrate that the plea of guilty was not the product of a free and rational choice, especially where the defendant was represented by competent counsel whose advice was that the plea would be to the defendant's advantage." *Id*. More specifically still, the Court noted that, "while most pleas of guilty consist of both a waiver of trial and an express admission of guilt, the latter element is not a constitutional requisite to the imposition of criminal penalty." *Id*. at 37. Therefore, the Court held, "An individual accused of crime may voluntarily, knowingly, and understandingly consent to the

imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." *Id*.

In the case before it, the Court reasoned as follows:

> *Nor can we perceive any material difference between a plea that refuses to admit commission of the criminal act and a plea containing a protestation of innocence when, as in the instant case, a defendant intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt*. Here the State had a strong case of first-degree murder against Alford. Whether he realized or disbelieved his guilt, he insisted on his plea because in his view he had absolutely nothing to gain by a trial and much to gain by pleading. Because of the overwhelming evidence against him, a trial was precisely what neither Alford nor his attorney desired. Confronted with the choice between a trial for first-degree murder, on the one hand, and a plea of guilty to second-degree murder, on the other, Alford quite reasonably chose the latter and thereby limited the maximum penalty to a 30-year term. When his plea is viewed in light of the evidence against him, which substantially negated his claim of innocence and which further provided a means by which the judge could test whether the plea was being intelligently entered, see *McCarthy v. United States, supra*, 394 U.S., at 466-467, 89 S. Ct., at 1170-1171 (1969), its validity cannot be seriously questioned. In view of the strong factual basis for the plea demonstrated by the State and Alford's clearly expressed desire to enter it despite his professed belief in his innocence, we hold that the trial judge did not commit constitutional error in accepting it.

*Alford*, 400 U.S. at 37-38 (emphasis added; footnote omitted). Thus, *Alford* requires an intelligent conclusion by the defendant that his interests require a guilty plea, despite his claims of innocence, and a record before the judge taking the plea that contains "strong evidence of actual guilt." *Id*. at 37.

Here, Smith contends that there was insufficient evidence in the record to support his actual guilt, because there was no evidence that would have satisfied the "incidental rule" applicable to the kidnaping offense with which he was charged or the lesser-included kidnaping offense to which he pleaded guilty. The Iowa Supreme Court explained the "incidental rule" as follows:

> In order to "confine" another person in violation of Iowa Code section 710.1, the confinement must exceed what is inherently incident in the underlying felony. This is called the "incidental rule." *State v. McGrew,* 515 N.W.2d 36, 39 (Iowa 1994); *State v. Rich,* 305 N.W.2d 739, 745 (Iowa 1981). "No minimum period of confinement is required to convict a defendant of kidnapping." *McGrew,* 515 N.W.2d at 39. The confinement must however be "significantly independent of the confinement incident to the commission of the underlying crime." *Id.* Confinement reaches the level required for section 710.1 if it "substantially increases the risk of harm to the victim, significantly lessens the risk of detection, or significantly facilitates escape following the commission of the underlying offense." *Id.* If the defendant merely "seizes" the victim during the commission of the crime, this does not rise to the level of confinement required for kidnapping. *State v. Mead,* 318 N.W.2d 440, 445 (Iowa 1982).
>
> The policy behind the incidental rule is that confinement against the victim's will is often an attendant circumstance in the commission of many of the underlying crimes in section 710.1. *McGrew,* 515 N.W.2d at 39; *Mead,* 318 N.W.2d at 445; *see also* Natalie A. Kanellis, Note, *Kidnapping in Iowa: Movements Incidental to Sexual Abuse,* 67 Iowa L.Rev. 773, 780 (1982). We have said the legislature did not intend to "afford prosecutors the option of bootstrapping convictions for kidnapping, carrying life sentences, onto charges for crimes for which the legislature provides much less severe penalties." *McGrew,* 515 N.W.2d at 39.

*State v. Griffin*, 564 N.W.2d 370, 373 (Iowa 1997). In *Griffin*, the Iowa Supreme Court held that the "incidental rule" had been satisfied, *inter alia*, when the defendant confined the victim for a longer period than was inherently required to commit the underlying sexual assault, that is, overnight in a motel room, and she was not free to leave, and when confinement continued after the sexual assault. *See id*. Similarly, in *McGrew*, the Iowa Supreme Court held that there was ample evidence from which a rational trier of fact could find that the confinement of the victim exceeded the degree of confinement inherent in the commission of sexual abuse, where the confinement, *inter alia*, involved the defendant's possession of weapons and keeping the victim secluded in her own bedroom, thereby decreasing the likelihood that the victim would escape, increasing the risk of harm to the victim, and lessening the risk of detection. *McGrew*, 515 F.3d at 39-40.

Upon *de novo* review, *see* 28 U.S.C. § 636(b)(1) (the district court *must* "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made"), the court agrees with Judge Zoss's conclusion that the trial court taking Smith's guilty plea satisfied the requirements of *Alford* and that the post-conviction relief court properly so concluded. Here, the State had a strong case of first-degree kidnaping against Smith, because, whether he realized or disbelieved his guilt, he insisted on his plea because in his view he had absolutely nothing to gain by a trial and much to gain by pleading. *Alford*, 400 U.S. at 37. Because of the overwhelming evidence against him, a trial was precisely what neither Smith nor his attorneys desired. As in *Alford*, when Smith's plea is viewed in light of the evidence against him, which substantially negated his claim of innocence of any kidnaping offense and which further provided a means by which the judge could test whether the plea was being intelligently entered, its validity cannot be seriously questioned. *Id*. at 38.

Specifically, contrary to Smith's contentions, the minutes of testimony which the trial court said it "reviewed" (not simply "looked at," as Smith contends), *see* Transcript of Plea And Sentencing, p. 21, *ll*. 6-8 (docket no. 9) (State Court Document l(*l*)), showed that the "incidental rule" had been overwhelmingly satisfied. Smith's quotation of parts of the minutes of testimony of Officer Taylor adroitly ignores, *inter alia*, Chandra Harper's Voluntary Statement, which is incorporated by reference into the minutes of her testimony, and which reveals that she was confined all night in her residence, a period much longer than is inherently required to commit sexual abuse, and that the confinement continued after Smith stopped sexually abusing her. *Cf. Griffin*, 564 N.W.2d at 373. Her Voluntary Statement also reveals that Smith was armed with a knife, threatened her, and used other objects to beat her, which reduced the likelihood that she would escape and increased the risk of harm to her, and that he moved her about in her home and ultimately assaulted her in her bedroom, thereby lessening the risk of detection. *McGrew*, 515 F.3d at 39-40. Thus, confronted with the choice between a trial for first-degree kidnaping, and a life sentence, on the one hand, and a plea of guilty to third-degree kidnaping, and a fifteen-year agreed sentence, on the other, Smith quite reasonably chose the latter and thereby limited the maximum penalty to a 15-year term for kidnaping and a total of 45 years for three consecutive sentences. *Cf. Alford*, 400 U.S. at 37-38. Indeed, again as in *Alford*, in view of the strong factual basis for the plea demonstrated by the State and Smith's clearly expressed desire to enter a guilty plea despite his professed belief in his innocence, this court agrees that the trial judge did not commit constitutional error in accepting Smith's plea. *Id*. at 38.

Smith nevertheless contends that he was not advised of the "incidental rule," by either the trial court or trial counsel, so that his guilty plea was not intelligently entered into, *see id*. at 37 (requiring an intelligent conclusion by the defendant that his interests

15

require a guilty plea, as well as strong evidence of guilt), and that he would have gone to trial and been acquitted had the rule been explained to him. This argument fails in light of the overwhelming evidence showing that the "incidental rule" *was* satisfied, so that, even had Smtih been apprised of the rule, any reasonable person in his position would have taken the same course of pleading guilty. Smith should be careful what he wishes for, because if his guilty plea is set aside, and he goes to trial, he will in all likelihood be found guilty of and sentenced to life imprisonment for first-degree kidnaping. Smith simply was not prejudiced by the court's failure to advise him of the "incidental rule" in addition to informing him of the elements of the kidnaping charge, including that the charge required proof of "confinement." Indeed, Smith has cited no precedent, Iowa or federal, imposing a "duty" on a court taking a plea to do more than identify the elements of the offense to which the defendant is pleading, which the trial court here did do. *Alford* certainly does not require more than Smith received, a trial court satisfied that there was strong evidence of the defendant's guilt, notwithstanding his protestations of innocence, and satisfied that the defendant had reached an intelligent conclusion that his interests required a guilty plea. *See Alford*, 400 U.S. at 37-38 (where a defendant pleads guilty despite protestations of innocence, the court must determine that the defendant has reached an intelligent conclusion that his interests require a guilty plea and that the record contains "strong evidence of actual guilt").

Smith also contends that Judge Zoss "underestimated" the impact of the trial judge's reversal of the burden of proof in his plea colloquy by asking if he agreed that any evidence that he or his witnesses would present would not necessarily overcome guilt beyond a reasonable doubt. He contends that this flaw, coupled with other flaws, demonstrates that the requirements for an *Alford* plea were not met in his case. This court doubts that the trial judge's question, "Do you agree that any evidence which you or your

witnesses would present before a jury would not necessarily overcome guilty beyond a reasonable doubt?," *see* Transcript of Plea And Sentencing, p. 6, *ll*. 2-4 (docket no. 9) (State Court Document 1(*l*)), improperly reversed the burden of proof, placing on Smith a burden to prove his innocence. Rather, the question, admittedly an inartful one, could be read simply as another way of querying whether Smith believed that he had valid defenses to the claim other than a general denial, but certainly did not state that Smith was *required* to offer any evidence or witnesses to overcome guilt. Whatever the import of this inartful question, however, the court agrees with Judge Zoss that any error it injected into the guilty plea proceedings was harmless, because Smith had already made clear that he believed that it was in his best interest to plead guilty, had already denied that the minutes of testimony would establish his guilt beyond a reasonable doubt, and subsequently made abundantly clear that he believed that he was innocent of the charges against him, but the trial court satisfied itself that there was nevertheless strong evidence of Smith's guilt. *See Alford*, 400 U.S. at 37-38 (where a defendant pleads guilty despite protestations of innocence, the court must determine that the defendant has reached an intelligent conclusion that his interests require a guilty plea and that the record contains "strong evidence of actual guilt"). Thus, the requirements of *Alford* were satisfied, notwithstanding any purported improper shifting by the trial court of the burden of proof to Smith to prove his innocence.

Smith's second objection to the Report and Recommendation will also be overruled.

### 3. *Erroneous finding that trial counsel adequately explained the "incidental rule"*

Smith's last objection is that Judge Zoss erred in finding that trial counsel adequately explained the "incidental rule" to him.

17

### a. Smith's argument

Smith contends that his trial attorneys both testified in the post-conviction relief proceedings that they had not heard of the "incidental rule" and had not explained it to Smith. He contends that, not only does this testimony demonstrate deficient performance by his trial attorneys, but the record shows that he was prejudiced by their failings, because if he had been properly informed of the "incidental rule," he would have gone to trial. He contends that a deal for a forty-five year sentence is only reasonable for someone facing a life sentence, but that the "incidental rule" precluded his conviction on a charge carrying a life sentence. Again, he asserts that the minutes of testimony show that the State would not have been able to show that the confinement of the victim in this case was more than just incidental to the commission of the offense of sexual assault.

### b. Analysis

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court explained that a claim of ineffective assistance of counsel requires the petitioner to prove the following:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687. The Supreme Court subsequently explained that, in the context of a guilty plea, the second prong of the *Strickland* test requires the defendant to "show that there is a reasonable probability that, but for counsel's errors, he would not

have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Here, the court may not be as convinced as Judge Zoss was that, despite not using the term "incidental rule," Smith's trial attorneys did not perform deficiently, because they adequately explained the import of the "confinement" element of the kidnaping offenses (either charged or to which Smith was pleading) by informing Smith that the State would have to prove that the victim was not free to leave, *i.e.*, that she was unable to remove herself voluntarily. *See* Report and Recommendation at 45; *but see Griffin*, 564 N.W.2d at 373 (the "incidental rule" had been satisfied, *inter alia*, when the defendant confined the victim for a longer period than was inherently required to commit the underlying sexual assault, that is, overnight in a motel room, and she was not free to leave). Nevertheless, the court readily agrees with Judge Zoss's conclusion that, regardless of whether Smith can show that his attorneys performed deficiently in failing to explain the "incidental rule" to him, his ineffective assistance of counsel claim fails on the "prejudice" prong of the analysis. *See Strickland*, 466 U.S. at 687 (the claimant must prove *both* deficient performance and prejudice). Here, for the same reasons that the court found that the Iowa courts properly concluded that the "incidental rule" was satisfied in Smith's case, the court holds that there is simply no reasonable probability that, but for his attorneys' alleged errors in failing to explain the "incidental rule," Smith would not have pleaded guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 59 (defining "prejudice" in the context of a guilty plea). The evidence identified in the minutes of testimony overwhelming satisfied the "incidental rule," such that any reasonable person in Smith's position would have taken the same course of pleading guilty, even if he had been advised of the requirements of that rule, and consequently, Smith was not prejudiced by any purported lack of understanding of what the "incidental rule" required. To put it another way, Smith would have been far more likely to be prejudiced by going to trial, in light of

19

the evidence identified in the minutes of testimony, which would likely have led to a conviction and life sentence for first-degree kidnaping, than by accepting a plea to three consecutive fifteen-year sentences for a lesser kidnaping offense and other charges.

Therefore, Smith's final objection will also be overruled.

## III. CONCLUSION

Upon the foregoing, none of Smith's objections to Judge Zoss's Report and Recommendation withstand scrutiny. Judge Zoss properly applied Supreme Court precedent, *Alford* itself, to the question of whether Smith's *Alford* plea was proper, even if he discussed Eighth Circuit case law concerning Rule 11 of the Federal Rules of Criminal Procedure; Judge Zoss properly concluded that the Iowa District Court complied with *Alford*; and Judge Zoss properly concluded that Smith's claim of ineffective assistance of counsel, based on failure to explain the "incidental rule," warranted no relief, because Smith cannot establish the "prejudice" prong of that ineffective assistance claim.

THEREFORE, petitioner Smith's May 21, 2008, Objections To Report and Recommendation (docket no. 35) are **overruled**, Chief United States Magistrate Judge Zoss's April 23, 2008, Report and Recommendation (docket no. 30) is **accepted**, and, consequently, petitioner Smith's March 30, 2006, *pro se* Petition Under 28 U.S.C. § 2254 For Writ Of Habeas Corpus By A Person In State Custody (docket no. 3) is **denied in its entirety**.

**IT IS SO ORDERED.**

**DATED** this 31st day of March, 2009.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA